## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MICHAEL ROLLINS,**

**Plaintiff,**                          **CIVIL ACTION NO. 15-cv-12681**

**v.**                                  **DISTRICT JUDGE NANCY G. EDMUNDS**

**FMR CORPORATION d/b/a**               **MAGISTRATE JUDGE MONA K. MAJZOUB**
**FIDELITY BROKERAGE SERVICES,**
**LLC**

          **Defendant.**
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL [20]

This matter comes before the Court on Plaintiff Michael Rollins' Motion to Compel. (Docket no. 20.) Defendant FMR Corporation, d/b/a Fidelity Brokerage Services, LLC, responded to Plaintiff's Motion (docket no. 25), and Plaintiff replied to Defendant's Response (docket no. 26). The parties have also filed a Joint Statement of Resolved and Unresolved Discovery Issues regarding Plaintiff's Motion to Compel. (Docket no. 27.) The Motion has been referred to the undersigned for consideration. (Docket no. 21.) The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). The Court is now ready to rule pursuant to 28 U.S.C. § 636(b)(1)(A).

## I.      BACKGROUND

Plaintiff, an African American, initiated this employment civil rights action on July 30, 2015, alleging that he was discriminated against on the basis of his race when he was "abruptly" terminated from his employment as a Workplace Planning and Guidance Consultant

("Workplace Consultant") and replaced with a "less qualified white male," in violation of Title VII of the Civil Rights Act of 1964, Michigan's Elliott-Larsen Civil Rights Act, and 42 U.S.C. § 1981. (Docket no. 1 at 5-8.) Plaintiff alleges that Defendant's stated reason for terminating him, namely violations of the company's Corporate Travel and Business Expense Policy, is false and a pretext for Defendant's racial discrimination. (*Id.* at 6.)

Plaintiff began working for Defendant in 2005, and became a Workplace Consultant in 2009. (*Id.* at 2.) As a Workplace Consultant, Plaintiff was essentially an investment broker who sold "financial investment services to individual employees of institutional employers" in Michigan. (*Id.* at 2.) His job required frequent local travel, and he regularly made reimbursement requests to Defendant for mileage, food, and lodging. (*Id.* at 3.) Plaintiff claims that he "consistently received good to excellent reviews, won awards, and achieved high sales numbers," as compared to other Workplace Consultants, and was "constantly adding millions of dollars of new business." (*Id.* at 3, 4.)

Plaintiff alleges that his problems began in May 2013, when Mr. Roger Trapp became manager of the Tax Exempt Market Department, where Plaintiff worked. After Plaintiff refused Mr. Trapp's request to give up a section of his sales territory, Plaintiff claims that Mr. Trapp singled Plaintiff out for an audit of his past reimbursement requests, even though all of these requests had already been approved and were "not out of line or unusual compared to those of his co-workers." (*Id.* at 3.) Defendant's investigators uncovered approximately $900 in reimbursement requests over an eighteen month period that Plaintiff was unable to account for, at least not at the time of the investigation. (*Id.* at 4.) Plaintiff claims, however, that he was "ambushed" by the investigators and became "flustered," and therefore "was understandably not able to muster 100% total recall for each and every expense over the 15 month period that he was

questioned about." (*Id.*)  Defendant terminated Plaintiff based on these expenses, and thereafter reported him to the Financial Industry Regulatory Authority as having committed fraud, which Plaintiff claims has rendered him "virtually unemployable in his field." (*Id.* at 4-5.)

In support of his claims of racial discrimination, Plaintiff asserts that he never submitted any false or fraudulent expense reimbursement requests, that similarly situated white employees were not singled out for reimbursement audits or terminated for submitting similar reimbursement requests, and that he was replaced by a less qualified white male, Mr. Seth Yanik. (*Id.* at 6.)  Plaintiff also claims that Mr. Trapp used a racially insensitive nickname for him, "brother," and for another black employee, Ms. Sherise Steele, whom Mr. Trapp allegedly called "kiddo." (*Id.* at 6.)  Ms. Steele eventually resigned from the company, although her resignation was because Mr. Trapp allegedly discriminated against her based on her gender. (Docket no. 20-8.)  Plaintiff claims white employees were not subjected to the same treatment by Mr. Trapp. Plaintiff also asserts that Defendant was not a racially diverse company; out of the 10-15 Workplace Consultants working for Mr. Trapp, Plaintiff claims that he and Ms. Steele were the only African Americans. (Docket no. 1 at 6.)

Plaintiff filed a charge of racial discrimination with the Equal Employment Opportunity Commission ("EEOC"), on October 3, 2014, and after his receiving his "right to sue" letter from the EEOC, filed this lawsuit on July 30, 2015. (Docket no. 1 at 2.)

Plaintiff served his first set of "Discovery Requests" on March 2, 2016.[1] (Docket no. 20-2.)  Defendant responded on April 20, 2016 (docket no. 20-3), and provided a Supplemental Response on May 23, 2016 (docket no. 20-6.)  Defendant provided some of the information and

---

[1] Plaintiff combined his interrogatories with his requests for production (*see* docket no. 20-2), in violation of Eastern District of Michigan Local Rule 26.1, which requires that interrogatories, requests for production, and requests for admission be numbered separately.  Defendant notes this deficiency in a footnote in response to Plaintiff's Motion (docket no. 25 at 2 n.2), and raised it in the General Objections section of its April 20, 2016 Discovery Responses (docket no. 20-3 at 2), but did not specifically object to it in response to Plaintiff's Motion or discuss it in the parties' Joint Statement of Resolved and Unresolved Discovery Issues (docket no. 27).

produced some of the documents Plaintiff requested, but not all, which prompted Plaintiff to file the instant Motion to Compel on July 6, 2016.  (Docket no. 20.)  Thereafter, the parties resolved some of the disputes raised in the Motion, and Defendant responded that Plaintiff's remaining requests were either not proportional to the case, overbroad, unduly burdensome, not relevant to Plaintiff's claims, or that Defendant had already produced all the responsive documents.  (Docket no. 25 at 5, 7, 9.)  Plaintiff clarified some of his requests in reply.  (Docket no. 26 at 2-4.)

On August 31, 2016, the parties filed their Joint Statement of Resolved and Unresolved Discovery Issues.  (Docket no. 27.)  The specific issues involved in the remaining discovery disputes are discussed in detail below.

## II.    GOVERNING LAW

The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad.  *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998).  Parties may obtain discovery on any matter that is not privileged, is relevant to any party's claim or defense, and is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).  "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Information need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1).  But the scope of discovery is not unlimited.  "District courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce."  *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

4

Rules 33 and 34 allow a party to serve interrogatories and requests for production of documents on an opposing party. Fed. R. Civ. P. 33, 34. A party receiving these types of discovery requests has thirty days to respond with answers or objections. Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A). Rule 30 allows a party to conduct a deposition of any person without leave of court, subject to certain exceptions. Fed. R. Civ. P. 30(a)(1). If the party receiving discovery requests under Rules 33 or 34 fails to respond properly, or if the person whose deposition is sought under Rule 30 fails to properly comply with the rule, Rule 37 provides the party who sent the discovery the means to file a motion to compel. Fed. R. Civ. P. 37(a)(3). If a court grants a Rule 37 motion to compel, or if discovery is received after a Rule 37 motion is filed, then the court must award reasonable expenses and attorney's fees to the successful party, unless the successful party did not confer in good faith before the motion, the opposing party's position was substantially justified, or other circumstances would make an award unjust. Fed. R. Civ. P. 37(a)(5)(A).

## III. ANALYSIS

According to the parties' Joint Statement of Resolved and Unresolved Issues, the parties' disputes regarding Plaintiff's Discovery Request nos. 3(g), 4(a) and (e), 5(e)(ii), and 16 remain unresolved. (*See* docket no. 27.) The parties also dispute whether Defendant should be required to produce a member of its Employee Relations team, Ms. Charleen Carey, for a deposition. (*See id.* at 8.) The Court will first address the discovery requests and Defendant's corresponding responses. The Court will then address Ms. Carey's deposition. Last, the Court will address Plaintiff's request for attorney fees and additional time for discovery.

### A. Discovery Request No. 3(g) - Expense Reimbursement Requests or Vouchers

Plaintiff's Discovery Request no. 3(g) asks Defendant to:

Identify all Workplace Consultants in Plaintiff's department, employed at any time while Roger Trapp was manager.  Of these persons:

. . . .

g. Identify all expense reimbursement requests or vouchers submitted by any of these persons between May, 2013 and June, 2014[.]

. . . .

Identify and produce all documents relating or referring to this answer.

(Docket no. 20-2 at 6.)

Defendant's initial response to this Discovery Request consisted of a list of 99 people (i.e., all the Workplace Consultants who worked in the Tax Exempt Market nationwide), identified by employee number, ethnicity, and the name of their manager.  After receiving this Response, Plaintiff clarified that he only sought the names and "reimbursement requests or vouchers" of the people who specifically worked under Mr. Trapp during the same time as Plaintiff.  (Docket no. 26 at 2.)  There are six such people identified as working for Mr. Trapp on Defendant's original list of 99.  Defendant objects that the names of these six people are irrelevant to Plaintiff's claims, as is any information that might be contained within their expense reimbursement requests.  Defendant further contends that "gathering the thousands of pages of documents for this Request places an undue burden on [Defendant], as it would require manually accessing the actual receipts and back-up documents in support of every expense report that each individual submitted."  (Docket no. 27 at 4.)  Defendant emphasizes that it identified the Workplace Consultants in the Tax Exempt Market who, like Plaintiff, were investigated for allegedly submitting false or fraudulent expense reimbursement requests, and argues that this is the "similarly situated" group against which Plaintiff should be comparing himself.  (Docket no. 25 at 6.)

6

Defendant's "similarly situated" argument fails.  It is well-settled law that, in the absence of direct evidence of discrimination, a plaintiff may establish a *prima facie* case of discrimination under Title VII and the Elliott Larsen Civil Rights Act by showing that:

> 1) he is a member of a protected class; 2) he was qualified for the job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an adverse employment action; and 4) he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside of his protected class.

*Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (other citations omitted).  If a plaintiff is able to do so, "the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse action," and if "the defendant satisfies this burden, the plaintiff must then show that the defendant's reason is a pretext for discrimination."  *Wilson v. Ford Motor Co.*, 513 Fed. App'x 585, 588 (6th Cir. 2013) (citations omitted).

To establish the fourth element of his *prima facie* case, Plaintiff is "not required to demonstrate an exact correlation between himself and others similarly situated; rather, he [has] to show only that he and his proposed comparators were similar in all relevant respects, and that he and his proposed comparators engaged in acts of comparable seriousness."  *Bobo v. United Parcel Serv.*, 665 F.3d 741, 751 (6th Cir. 2012) (abrogated on other grounds) (citations omitted).

Plaintiff essentially claims that he was terminated because of his race and his refusal to give up part of his sales territory, and that Mr. Trapp ordered the audit that led to Plaintiff's termination to create the pretext that Plaintiff had submitted fraudulent reimbursement requests when Plaintiff had not.  Given the broad scope of discovery, expense reimbursement requests submitted to Mr. Trapp from other employees during the same time period as Plaintiff are at least arguably relevant to Plaintiff's claims.  If requests from other employees are similar to the

requests submitted by Plaintiff, yet did not prompt an audit request by Mr. Trapp or a termination, Plaintiff may be able to rely on them to establish that he was singled out for less favorable treatment than those employees, or that Defendant's reasons for terminating Plaintiff were a pretext.

Defendant's proportionality argument also fails.  The Court finds the argument suspect because, even after Plaintiff narrowed his request from 99 people to six, Defendant still maintains that fulfilling this request will require Defendant to gather "thousands" of pages. (Docket nos. 25 at 6-7, 27 at 3-4).  Plaintiff's request is also reasonably limited to the specific time period during which Plaintiff worked for Mr. Trapp, May 2013 to June 2014.

The Court will therefore grant Plaintiff's Motion to Compel with respect to Discovery Request No. 3(g) and order Defendant to identify and produce all expense reimbursement requests or vouchers submitted between May 2013 and June 2014 by the six people identified by Defendant as having worked under Mr. Trapp during that time.  Defendant must do so **on or before January 13, 2017.**  The Court notes that Defendant originally also objected to this discovery request "to the extent that it requests non-parties' personal information, the production of which would invade such non-parties' legitimate privacy interests."  (Docket no. 20-3 at 7.) Since that time, a Stipulation and Agreed Confidentiality Order has been entered.  (*See* docket no. 28.)  To alleviate Defendant's privacy concerns and because these records may indeed contain information the six employees wish to keep private, these records should be produced pursuant to this Agreed Confidentiality Order.

### B. Discovery Request No. 4(a) and (e) - Seth Yanik

Plaintiff's Discovery Request No. 4 relates to the employment of Mr. Seth Yanik, who was allegedly hired to replace Plaintiff.  In Discovery Request No. 4(a) and (e), Plaintiff asks Defendant to:

> a. Describe all communications between Roger Trapp and Seth Yani[k] concerning Mr. Yani[k] working in Mr. Trapp's department; [and]
> . . . .
> e. Fully describe records relating or referring to Mr. Yanick's employment, including all personnel records including but not limited to:
> > i. his registration file, complaint file, and employment file;
> > ii. expense voucher reimbursements;
> > iii. territory assigned;
> > iv. sales achieved;
> > v. compensation in detail, including pay, bonus, and all fringe benefits and perquisites.

Identify and produce all documents relating or referring to this answer.

(Docket no. 20-2 at 7.)

Regarding Request No. 4(a), Defendant objected on the grounds that the request was overbroad, unduly burdensome, not relevant to Plaintiff's race discrimination claims, and sought a non-party's personal information (docket no. 25 at 9-10), and because the phrase "all communications," is "not sufficiently defined."  (Docket no. 20-3 at 8.)  In his Reply, Plaintiff clarified that he "only wants communications between Trapp and Yani[k] regarding the hiring process—not all communications regarding Yani[k]'s employment."  (Docket no. 26 at 4.) Regarding subpart 4(e), Defendant states that it did produce a copy of the resume Mr. Yanik included in the job application he submitted to Mr. Trapp.  The remaining documents and information Plaintiff seeks in Discovery Request no. 4(e), Defendant argues, are not relevant to his claims.  Defendant also argues that, even with Plaintiff's clarification regarding subpart (a), Discovery Request nos. 4(a) and (e) are overbroad, unduly burdensome and not relevant to Plaintiff's claims.  (Docket nos. 25 at 9-10, 27 at 5-6.)

9

Plaintiff argues that Mr. Yanik's personnel information is relevant because Mr. Yanik was clearly hired to replace Plaintiff and is not a member of Plaintiff's protected class, an element of each of Plaintiff's racial discrimination claims.   Plaintiff also contends that the information and documents he requests specifically in 4(e) are relevant because he needs to "compare his allegedly excessive expense voucher requests to those of Yani[k] who is in the same territory, as well as the other information in Yani[k]'s file so that he may compare himself to his similarly situated replacement."  (Docket no. 26 at 3-4.)

Defendant's response is that Mr. Yanik, who was hired four months after Plaintiff was terminated, did not "replace" Plaintiff, and that his hiring "had no bearing on [Defendant's] decision with respect to Plaintiff."   (Docket no. 27 at 6.)   And, similar to its objection to Discovery Request no. 3(g), discussed above, Defendant contends that Mr. Yanik's personnel records, including the expense reimbursement requests, are not relevant because they "simply do not provide insight into whether Yani[k] ever committed or was investigated for expense fraud comparable to [Plaintiff]."  (Docket no. 25 at 9.)

Regarding Discovery Request no. 4(a), the Court finds that communications between Mr. Yanik and Mr. Trapp regarding the hiring process are not likely to contain information relevant to Plaintiff's claim that Mr. Yanik was hired to replace Plaintiff.   The Court will deny this request.

The Court finds that Mr. Yanik's personnel files, which Plaintiff seeks in Discovery Request no. 4(e)(i), however, could contain information relevant to the question of whether Mr. Yanik was hired to replace Plaintiff, such as Mr. Yanik's client list, stated duties, or other information.   The same is true for the information Plaintiff seeks in Discovery Request no. 4(e)(iii), relating to Mr. Yanik's sales territory.   The Court will therefore grant Plaintiff's Motion

10

to Compel the production of the personnel files described in Discovery Request no. 4(e)(i), and order Defendant to produce these files, without further objection, **on or before January 13, 2017.** Because these files may contain private information about Mr. Yanik, Defendant is instructed to produce the files pursuant to the previously entered Stipulation and Agreed Confidentiality Order. (Docket no. 28.) The Court will also grant Plaintiff's Motion to Compel Defendant's answer to Discovery Request no. 4(e)(iii), and order Defendant to "[f]ully describe records relating or referring to Mr. Yanick's . . . territory assigned," without further objection, **on or before January 13, 2017**.

To the extent that the information and documents Plaintiff seeks in Discovery Request no. 4(e)(ii), (iv), and (v) are not contained within Plaintiff's personnel files described in Discovery Request no. 4(e)(i), the Court will deny these requests. Mr. Yanik's expense reimbursement vouchers (4(e)(ii)), sales achieved (4(e)(iv)), and total compensation (4(e)(v)) are simply not relevant to the question of whether Mr. Yanik was hired to replace Plaintiff. This information is also not relevant to the question of whether similarly situated employees were treated more favorably than Plaintiff, because Mr. Yanik did not begin working for Mr. Trapp until four months after Plaintiff was terminated. The Court found Plaintiff is entitled to the expense reimbursement requests or vouchers for other employees who worked under Mr. Trapp, but only for the same time period during which Plaintiff also worked under Mr. Trapp. (*See above,* Section III.A., Discovery Request 3(g) - Expense Reimbursement Requests or Vouchers.) While Mr. Trapp's handling of those expense reimbursement requests could conceivably show that Plaintiff was "singled out," the same is not true for Mr. Trapp's handling of Mr. Yanik's reimbursement requests, months after Plaintiff was terminated.

**C. Discovery Request Nos. 5(e)(ii) and 16 - Plaintiff's Employment and Termination**

Plaintiff's Discovery Request nos. 5(e)(ii) and 16 relate to Plaintiff's employment and termination.  Plaintiff's Discovery Request no. 5(e)(ii) asks Defendant to:

> Fully describe records relating or referring to Plaintiff's employment [from May 2013 until his termination], including:
> . . . .
>        (ii) expense voucher reimbursements
> . . . .
>
> Identify and produce all documents relating to this answer.

(Docket no. 20-3 at 9-10.)  Plaintiff's Discovery Request no. 16 relates to Plaintiff's termination, and asks Defendant to identify:

> a. The reason for the termination;
> b. the date the determination to terminate was made;
> c. identify each and every person with knowledge of the facts underlying the decision to terminate
> d. identify each and every person involved in the decision to terminate Plaintiff's employment, including a description of each such person's involvement;
> e. any and all communications given to Plaintiff concerning his termination.
>
> Identify and produce all documents relating or referring to this answer.

(Docket no. 20-3 at 16.)

Regarding Discovery Request no. 5(e)(ii), Defendant asserts that it has produced "a detailed spreadsheet of [Plaintiff's] expense reports from 2012-2014," as well as "*all* expense reports that Plaintiff submitted during the period of 2012 to June 2014, including the receipts that Plaintiff submitted with his expense reports for the same period of time."  (Docket no. 27 at 7-8.)  As for Discovery Request no. 16, Defendant answered each of the interrogatories in its original discovery responses, such that the only dispute remaining with regard to Discovery Request no. 16 concerns the production of documents.  (*See* docket no. 20-3 at 17.)[2]   Regarding the

---

[2] In his Motion, Plaintiff specifies that he only seeks the production of documents (and the deposition of Ms. Charleen Carey, discussed below) and not answers to interrogatories.  (*See* docket no. 20 at 2.)  The Court notes, however, that Discovery Request no. 4(e)(iii) (regarding Mr. Yanik's sales territory), which is discussed above, is more in the nature of an interrogatory.

documents Plaintiff seeks in Request no. 16, Defendant concedes that certain investigatory reports were discarded as is routinely done, but asserts that it produced "the entire investigation file as it is maintained in the ordinary course of business."  (Docket no. 27 at 8.)  Defendant therefore asserts that it has "fully responded and provided all available documents" in response to these discovery requests.  (*Id.* at 7.)  In the parties' Joint Statement, Plaintiff does not specify which documents he still seeks, instead only generally stating that Defendant did not produce "source documents."  (*Id.*)

Based on Defendant's representations, and the affidavit of defense counsel attached to Defendant's Response to Plaintiff's Motion (docket no. 25-1), the Court will deny Plaintiff's Motion with regard to Discovery Request nos. 5(e)(ii) and 16.  Nevertheless, the Court will order Defendant to serve Plaintiff with amended answers to these discovery requests, indicating that Defendant has produced all responsive documents within its possession, custody, and control, and **to serve the amended answers on Plaintiff on or before January 13, 2017.**

### D. Deposition of Charleen Carey

The last issue concerns the deposition of Ms. Charleen Carey, a member of Defendant's Employee Relations team.  (Docket no. 20 at 7.)  Ms. Carey was not involved in any complaints Plaintiff made against Mr. Trapp; however, she apparently did receive a letter of resignation from one of Plaintiff's former co-workers, Ms. Sherise Steele, a black woman who also worked for Mr. Trapp.  In the letter, Ms. Steele complains that Mr. Trapp made derogatory comments about her as a woman and promoted men "despite their lower ranking than women."  (Docket no. 20-8.)  Ms. Carey received Ms. Steele's letter approximately nine months after Plaintiff was terminated.  Plaintiff contends that deposing Ms. Carey will help him "determine whether there is a pattern or practice of discrimination" because Ms. Steele's complaint "was made against the

13

same manager, at the same branch, around the same, as when Plaintiff was discharged." (Docket no. 20 at 13.) Plaintiff also argues that he should be allowed to depose Ms. Carey because, although Ms. Carey did not have contact with Plaintiff, she "is likely to have knowledge of other discrimination complaints against Defendant's company more generally," and therefore can help establish "a pattern of discriminatory conduct or disparate impact at Defendant's company." (*Id.*)

Defendant contends that deposing Ms. Carey regarding Ms. Steele's letter is not likely to lead to the discovery of relevant, admissible evidence for two reasons. First, Defendant argues, Ms. Steele's allegations against Mr. Trapp related to her gender, not her race. Second, Defendant asserts that Ms. Carey did not investigate the allegations made by Ms. Steele in the letter; another one of Defendant's employees did. (Docket no. 25 at 12-13.) Defendant further argues Plaintiff should also not be allowed to depose Ms. Carey concerning her knowledge of "discrimination complaints against Defendant's company more generally," because such complaints would not be relevant in "this single plaintiff race discrimination case." (*Id.* at 13-14.) Finally, Defendant seems to take the position that allowing Plaintiff to question Ms. Carey regarding discrimination complaints at the company, generally, would convert her into a Federal Rule of Civil Procedure 30(b)(6) witness, for which Defendant has not been properly noticed. (*Id.* at 14.)

The Court concludes that Plaintiff was not required to serve a Rule 30(b)(6) notice in order to depose Ms. Carey. Plaintiff was, however, required to serve a general deposition notice under Federal Rule of Civil Procedure 30(b)(1), and (2) if applicable, during the discovery period, which has closed as of June 15, 2016. Plaintiff failed to do so, and on this basis, the Court will deny Plaintiff's request to order Defendant to produce Ms. Carey for a deposition.

14

However, if the parties mutually agree to proceed with the deposition, despite the fact that it was not properly noticed, they are permitted to do so.

**E. Other Relief Requested by Plaintiff**

In his Motion to Compel, Plaintiff also requests payment of attorney fees incurred in bringing the Motion, and a thirty day extension of discovery "to allow Plaintiff time to follow-up with any additional discovery requests that may arise" out of the responses Plaintiff receives in response to this Opinion and Order.  (Docket no. 20 at 14.)

Federal Rule of Civil Procedure 37(a)(5)(C) allows the Court to "apportion the reasonable expenses" incurred in a filing a motion to compel when the motion is granted in part and denied in part.  The Court finds that each party should be responsible for their own attorney fees and costs associated with Plaintiff's Motion.  The Court only partially granted the relief Plaintiff seeks, and Defendant's objections the Discovery Requests were substantially justified.  Under these circumstances, the Court will not award Plaintiff attorney fees.

The Court does, however, find that some additional time for discovery is warranted in light of the Court's decision regarding Discovery Request nos. 3(g), 4(e)(i), and 4(e)(iii).  The Court will allow an additional thirty days of discovery, specifically limited to any issues that arise from the production of the discovery ordered herein.  **This discovery period will begin January 14, 2017, and conclude February 13, 2017.**

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel [20] is **GRANTED IN PART**, and **DENIED IN PART** as follows:

a. Plaintiff's Motion to Compel is GRANTED with regard to Discovery Request nos. 3(g), 4(e)(i), and 4(e)(iii).  Defendant will produce the requested information and documents, without further objection, in accordance with this Opinion and Order and

with the Stipulation and Agreed Confidentiality Order (docket no. 28), **on or before January 13, 2017**.

b.  The parties are granted an additional thirty days of discovery, limited to any issues that may arise from the discovery ordered herein, **to begin January 14, 2017, and conclude February 13, 2017;**

c.  Plaintiff's Motion to Compel is DENIED with regard to Discovery Request nos. 5(e)(ii) and 16.  Defendant is ordered to serve Plaintiff with amended responses to these discovery requests **on or before January 13, 2017,** indicating that Defendant has produced all responsive documents within its possession, custody, and control;

d.  Plaintiff's Motion to Compel is DENIED with regard to Discovery Request nos. 4(a), 4(e)(ii), and 4(e)(iv)-(v), to the extent that such information is not contained within Mr. Seth Yanik's personnel files;

e.  Plaintiff's Motion to Compel is DENIED with regard to the deposition of Ms. Charleen Carey; and

f.  Plaintiff's request for attorney fees is DENIED.

## <u>NOTICE TO THE PARTIES</u>

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).


Dated: December 2, 2016          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Opinion and Order was served upon counsel of record on this date.

Dated:  December 2, 2016       <u>s/ Lisa C. Bartlett</u>
                                          Case Manager